**JACOBS, Plaintiff-Appellee, v. INDUSTRIAL COMMISSION OF OHIO, Defendant-Appellant.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3199. Decided November 6, 1947.

James S. Cooper, Oscar A. Stephens, Youngstown, for plaintiff-appellee.

Hugh S. Jenkins, Atty. Genl., R. Brooke Alloway, Asst. Atty. Genl., C. Robert Tatgenhorst, Asst. Atty. Genl., Columbus, for defendant-appellant.

## OPINION

By PHILLIPS, J.

Defendant, the Industrial Commission of Ohio, appeals on questions of law from an order of the court of common pleas sustaining plaintiff's motion for a new trial made in her action filed therein to determine her right to receive compensation for the death of her husband, upon whom admittedly she was solely dependent for support when concededly he died on May 8, 1943, from gun shot wounds received on May 7, 1943, allegedly while an employee of The Tod House Operating Company, a corporation.

It is admitted by answer, stipulated or undisputed that plaintiff's decedent was the sole owner of the Watkins-Jacobs Detective Agency when shot and at the time of his death; that such corporation was "an employer amenable to and com-

plied with the provisions of the act" (Workmen's Compensation Act); that "after his death plaintiff filed with this defendant an application for benefits from said state insurance fund upon which proceedings were had as set forth in her petition", in which she alleged inter alia "that defendant denied plaintiff's claim for compensation on the ground that decedent, Guy Jacobs, was not an employee" of The Tod Hotel Operating Company when shot; that subsequently "she filed her application with defendant for rehearing on her claim" and upon reconsideration and rehearing thereof it again denied it on the same grounds.

There is evidence that for a long time prior to his death plaintiff's decedent had served The Tod House Operating Company more or less regularly on weekends as house detective in the Tod Hotel owned and operated by that corporation; that he was working there on the evening of May 7, 1943, when "about ten or eleven" o'clock an unnamed man complained to the "resident manager" or "assistant manager" thereof that his wife was occupying a room therein with a soldier; that subsequently the assistant manager visited such room. found complainant's wife therein, who "seemed to be ready to run", and ordered her to leave, which she did; that later in company with a woman employee of the Tod Hotel, whom he requested to accompany him, he again visited the same room, which was vacant; that still later plaintiff's decedent who had assisted the resident manager in "walking" the complainant from the hotel lobby, and who until then had remained therein just "outside of the door to see that the noisy one would not come back in at that time", went to the same room with and at the request and direction of the assistant manager and found a man named Martini in it with whom they conversed, during which conversation upon Martini's failure to produce his "dog tags" the assistant manager suggested to "plaintiff's decedent" that he thought "this was a case" for the "M. P.'s, don't you Guy", in which statement plaintiff's decedent acquiesced, and which question he answered in the affirmative.

The testimony further discloses that Martini entreated them not to call the military police, whose entreaties they ignored, and that as the assistant manager called the hotel telephone operator to instruct her to "call the police", or shortly after completing such call, Martini said "alright, now you have asked for it, you are going to get it", and shot the assistant manager and plaintiff's decedent as they backed from the room.

In response to the question asked him on direct examination "did you give Mr. Jacobs any directions as to where he

should stand?" in the lobby of the Tod Hotel the assistant manager answered "I did not"; and on direct examination the manager thereof testified that plaintiff's decedent "was in there on the job", but that there was neither an oral nor written contract between The Tod Hotel Operating Company and plaintiff's decedent defining his status.

There is testimony that a man identified as "Mike" on one occasion had substituted for plaintiff's decedent, and evidence that checks paying him and plaintiff's decedent for services rendered to The Tod Hotel Operating Company were made payable to The Watkins-Jacobs Investigating Agency, and endorsed as such by a stamp bearing the written signature of Guy Jacobs.

"Upon motion to direct a verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. But if upon any essential issue, after giving the evidence such favorable construction, reasonable minds can come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him." **Hamden Lodge v. Ohio Fuel Gas Co., 127 Ohio St. 469**, 189 N. E. 246.

The instant case is in the twilight zone, it is a borderline case, and in approaching a consideration of the testimony and a weighing of the evidence thereon to determine whether the trial judge erred in overruling defendant's motion "for a verdict directed in its favor made at the close of plaintiff's case and renewed after the introduction of all the evidence", this court is conscious of the fact that there is a conflict in the testimony of the manager and "resident manager" or "assistant manager" of the Tod Hotel, both of whom testified for plaintiff, and who were the only witnesses who testified in the case as to whether plaintiff's decedent was an employee of The Tod Hotel Operating Company or an independent contractor at the time he was shot, which is the real controversy between the parties to this appeal.

Giving the evidence in this case such favorable construction with reference to that controversy as in the case of Hamden Lodge v. Ohio Fuel Gas Co., supra, the supreme court has said we must, we conclude that reasonable minds could come to different conclusions on that question, and that the trial judge did not err to defendant's prejudice in overruling its motions for a verdict directed in its favor.

As counsel for defendant states by brief "there is a formidable array of cases" which hold that an order granting a new

trial is not a final determination of the rights of the parties and is not, therefore, a judgment nor final order reviewable by the court of appeals unless it clearly appears that the trial court abused its discretion in granting such order.

Counsel for defendant are willing to accept the holdings in such cases "as the correct embodiment of the law of Ohio as. it existed prior to the" amendment of §12223-2 GC, "and the adoption of the present **Section 6, Article 4 of the Constitution of Ohio,** effective January 1, 1945", but they contend that such is not the law of Ohio now, and that if the trial judge erred in this case in granting a new trial his action is a final appealable order regardless of whether he clearly abused his discretion in doing so.

While possibly another trial judge would not have disturbed the verdict of the jury on the ground that it "is contrary to the manifest weight of the evidence and is not sustained by sufficient evidence", yet reviewing carefully, as we have, the meager bill of exceptions submitted to us for review we cannot conclude that the trial judge erred nor clearly grossly abused his discretion in sustaining plaintiff's motion for a new trial.

Assuming, but not determining, that the law applicable to this case is now as counsel for defendant contends it is, it is obvious from what we have said that we cannot reverse the judgment of the court of common pleas on any of the grounds urged by counsel for defendant, all of which have been disposed of in this opinion.

Defense counsel has failed to call our attention to "other errors apparent upon the record and prejudicial to the rights of defendant-appellant" as alleged as a ground of error, and to comply in respect thereto with the provisions of Rule VII of this court that his briefs "shall contain a statement of the questions presented and a succinct statement of so much of the cause, referring to the pages of the record, as is necessary to show how the questions arise, together with a statement of the authorities relied upon". Accordingly, we will not pass upon this assigned ground of error.

The judgment of the court of common pleas is affirmed.

CARTER, PJ, NICHOLS, J, concur in judgment.